IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN CLARKE, JR., *et al.*, }<br>       *Plaintiff(s)* } | |
| v. } | CIVIL ACTION NO. H-04-3972 |
| CONVERGYS CUSTOMER }<br>MANAGEMENT GROUP, INC., }<br>       *Defendant(s)* } | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this Fair Labor Standards Act ("FLSA") case is Plaintiffs' motion for notice to potential class members and for limited discovery (Doc. 15). For the reasons set forth below, the Court **ORDERS** that Plaintiff's motion is **GRANTED**.

### I.  BACKGROUND AND RELEVANT FACTS

Defendant Convergys Customer Management Group, Inc. ("CCMG") provides telephonic customer service and sales support to corporate clients. CCMG operates 35 call centers across the United States. Plaintiffs John Clarke Jr. ("Clarke"), Alfred Holloway ("Holloway") and Teresa Aaronson ("Aaronson") worked as hourly, non-exempt telephone-dedicated workers in CCMG's Houston call center. Plaintiffs claim that CCMG systematically failed to pay them and other workers at the Houston call center overtime for tasks they performed off-the-clock, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiffs' central claim is that they were paid only for the time during which they were logged into CCMG's Time Keeping System ("TKS"), even though they were required to perform tasks both before logging in and after logging out of TKS. The tasks Plaintiffs allege they were required to perform off-the-clock include, *inter alia*, the following: searching for available workstations, reading daily e-mails from management, booting up their computers, logging into several computer programs, and otherwise preparing to take calls.[1] Plaintiffs further allege that they complained to CCMG management about these "pay problems," but to no avail.[2] According to Plaintiffs, there are 500 to 800 other

---

[1] Declarations of Clarke, Holloway & Aaronson (Doc. 15 Exs. 3-5).

[2] *Id.*

employees at the Houston call center who "performed the same or similar job duties" that they performed.[3]

Plaintiffs filed suit in this Court in October 2004 and now seek to have this Court conditionally certify their proposed class for collective action under FLSA, to issue court-approved notice to all potential class members, and to grant them discovery of all of the Houston call center workers' (*i.e.*, whom they assert constitute the potential class) contact information. CCMG has responded and the parties have extensively briefed the issues. CCMG's primary contentions in opposition to Plaintiffs' motion are as follows: (1) Plaintiffs misunderstand or misconstrue the TKS system, which in fact *does* compensate Plaintiffs for the tasks at issue; and (2) Plaintiffs' claims and the issues they raise can only be resolved on an individualized, case-by-case basis, so that collective treatment and any court-approved notice are inappropriate.

## II.   STANDARD GOVERNING WHETHER NOTICE IS PROPER

Section 16(b) of the FLSA provides that a person may maintain an action on "behalf of himself ... and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[4] A representative action brought pursuant to this provision follows an "opt-in" rather than an "opt-out" procedure.[5] District courts have the discretion to implement the collective action procedure by facilitating notice to potential plaintiffs.[6] Such a notice should be "timely, accurate, and informative."[7]

---

[3] *Id.*

[4] 29 U.S.C. § 216(b).

[5] *See Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir.1995). Although *Mooney* was litigation under the ADEA, it applies here because the ADEA explicitly incorporates § 16(b) of the FLSA. *Mooney,* 54 F.3d at 1212.

[6] *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989).

[7] *Id.* at 172.

The Fifth Circuit has not specifically addressed the meaning of "similarly situated" in this context. However, in *Mooney,* the Fifth Circuit reviewed two methodologies courts have used in deciding this question. The first methodology is a "two-stage class certification," originally set out in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987). Under this methodology, "the trial court approaches the 'similarly situated' inquiry via a two-step analysis."[8] The first determination is made at the "notice stage." At the notice stage, "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."[9] Because the court has minimal evidence, "this determination is usually made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[10] If the district court conditionally certifies the class, "potential class members are given notice and the opportunity to 'opt-in.'"[11] The second stage is typically precipitated by a motion for "decertification" by the defendant after discovery is largely complete.[12] If the additional claimants are similarly situated, the district court allows the representative action to proceed. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.

The second methodology is typified by *Shushan v. University of Colorado,* 132 F.R.D. 263 (D.Colo.1990). This approach adopts the view that the "similarly situated" inquiry is coextensive with Rule 23 class certification. Therefore, using this methodology, the court looks at numerosity, commonality, typicality and adequacy of representation to determine whether a class should be certified.[13]

---

[8] *Mooney,* 54 F.3d at 1213.

[9] *Id.* at 1213-14.

[10] *Id.* at 1214.

[11] *Id.*

[12] *Id.*

[13] *See Mooney,* 54 F.3d at 1214.

The Fifth Circuit in *Mooney* found it unnecessary to decide which of the two methods was appropriate. However, in *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286 (5th Cir.1975), the Fifth Circuit found a "fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)" because Rule 23 provides for "opt-out" class actions and § 16(b) provides for "opt-in" class actions.[14] The *LaChapelle* court stated that "it is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits."[15]

Other courts of appeals have indicated that the Rule 23 requirements do not apply to the § 16(b) collective action procedure,[16] and it is clear that the two-step approach is "the prevailing test among the federal courts."[17] In particular, the two-step process has the advantage of informing the original parties and the court of the number and identity of persons desiring to participate in the suit. With that information, analysis may be performed on the viability of the class and its representatives.

The Court therefore holds that the two-stage class certification approach applies to determine whether notice is appropriate in the current action. In determining whether notice is appropriate, the Court must determine whether there are other employees "who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."[18] Notice is appropriate when there is "a demonstrated similarity among the individual situations . . . some

---

[14]*Id.* at 288.

[15]*Id.*

[16]*See Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir.2001) (finding that the district court did not err in applying the "ad hoc" two-step approach); *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) ("it is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under [Rule] 23"); *King v. GE Co.,* 960 F.2d 617, 621 (7th Cir.1992) (stating that the § 216(b) procedure preempts the Rule 23 class action procedure).

[17]*Barnett v. Countrywide Credit Indus., Inc.*, 2002 WL 1023161 at *1 (N.D. Tex. May 21, 2002).

[18]*Dybach v. Fla. Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir.1991).

factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."[19]

## III. ANALYSIS

As noted above, "the trial court approaches the 'similarly situated' inquiry via a two-step analysis."[20] At the notice stage, "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."[21] Because little, if any, discovery has taken place, "this determination is usually made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[22] If the district court conditionally certifies the class, "potential class members are given notice and the opportunity to 'opt-in.'"[23]

Not all groups of employees are similarly situated for purposes of collective action under FLSA. In *Dorsey v. J&V Communication Services, Inc.*, for example, the lead plaintiff relied on scant allegations in seeking conditional certification and notice that amounted to nothing more than the following: (1) three individuals besides himself had opted in to the action; and (2) all four of them were aware of "numerous" other employees who wanted to opt in.[24] Furthermore, it was apparent from the pleadings and affidavits in *Dorsey* that the lead plaintiff sought conditional certification of a class that would have included employees who held different types of jobs and

---

[19]*Crain v. Helmerich & Payne Int'l Drilling Co.,* 1992 WL 91946, *2 (E.D.La. April 16, 1992) (quoting *Heagney v. European American Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988)).

[20]*Mooney,* 54 F.3d at 1213.

[21]*Id.* at 1213-14.

[22]*Id.* at 1214.

[23]*Id.*

[24]*See, e.g.*, *Dorsey v. J&V Communication Services, Inc.*, No. H-04-0496 (S.D. Tex. May 20, 2004) (Harmon, J.)

who were located in different cities. The plaintiff, moreover, failed to provide substantial allegations to support his assertion that these employees were similarly situated.[25]

The Plaintiffs in the present action do not suffer from the same shortcomings. As noted above, Plaintiffs have made detailed allegations regarding the allegedly unlawful policies at issue in this case. Principal among these is the assertion that CCMG's TKS policy systematically deprives Plaintiffs of overtime pay for off-the-clock work. Plaintiffs seek conditional certification of and notice to workers (1) in a single job category (2) on a single floor (3) at a single facility (*i.e.*, the Houston call center) (4) who were all hourly, non-exempt employees. Most importantly, all of the workers in the potential class are alleged to have been subjected to the same unlawful practices (*i.e.*, the TKS policy) and to have performed the same type of pre- and post-shift, off-the-clock tasks. Accordingly, the Court finds that the class should be conditionally certified, that court-approved notice is appropriate, and that the discovery sought by Plaintiffs is appropriate.

CCMG has raised several issues which are not necessarily without merit. CCMG argues that the TKS system actually does credit employees for all of the time they are on their computers, contrary to Plaintiffs' allegations. Furthermore, CCMG argues that the "inherently individualized nature" of "off the clock" overtime claims, such as those asserted here, "render them unfit for collective treatment."[26] In addition, CCMG argues that its Employee Reference Guide instructs workers to report any problems with clocking in to their supervisors, and that this policy will also necessarily create inherently individualized issues.[27] This Court does not agree with CCMG that all "off the clock" cases are so inherently individualized that they are all unfit for collective treatment.[28] Moreover, the issues raised by CCMG are of the sort that are appropriate for

---

[25]*Id.*

[26]Doc. 19 at 1.

[27]*Id.* at 8.

[28]*See, e.g.*, *U.S. Dept. of Labor v. Cole Enterprises*, 62 F.3d 775 (6th Cir. 1995) (affirming district court's entry of judgment in favor of Secretary of Labor in "off the clock" case and approving use of estimates in calculating back wages due).

consideration during the second-stage analysis, and not during the initial "notice" stage.[29]  The Court will take up those issues in due time.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **ORDERS** that Plaintiffs' motion for notice to potential class members and for limited discovery (Doc. 15) is **GRANTED**.  Plaintiffs' proposed notice, the contents of which the parties did not discuss, appears generally acceptable to the Court.  Plaintiffs should submit a finalized version of this proposed notice, filling in appropriate dates and correcting any typos, to the Court within **5 DAYS** of the entry of this Order.  Plaintiffs should also submit a proposed order granting them the particular discovery sought within **5 DAYS**.  If possible, the parties should confer and reach an agreement regarding how this discovery is to proceed prior to the submission of Plaintiffs' proposed order.

**SIGNED** at Houston, Texas, this 13th day of May, 2005.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[29] *See Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001) ("During this 'second stage' analysis, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations....").